UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:09-CV-00121-TBR

JOHN BAQUIE, as Trustee for the J.D.R.
Baquie Living Trust                                                                    PLAINTIFF

v.

EASTERN ENERGY CORPORATION, and
MARK KROMAN                                                                            DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon Defendants' Motion to Compel Arbitration (DN 9). Plaintiff has filed a response (DN 11). Defendants have filed a reply (DN 12). This matter is now ripe for adjudication. For the reasons that follow, Defendants' motion is **GRANTED**.

Also before the Court is Plaintiff's Motion for Leave to File an Amended Complaint (DN 10). Defendants have filed a response (DN 13). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's motion is **GRANTED**.

## BACKGROUND

The plaintiff in this action is John Baquie, the Trustee for the J.D.R. Baquie Living Trust ("Trust"). The defendant, Eastern Energy Corporation, is a Kentucky corporation which is involved in the business of selling interests in oil and natural gas wells. The defendant, Mark Kroman, is the principal officer of Eastern Energy Corporation.

The Trust, for investment purposes, purchased certain units, or interests, in wells which were offered by Defendants. The Trust executed at least four separate Drilling and Operating Agreements ("Agreements"): Hutchens Well Bore Joint Venture; Huffman 1-H Drilling Program; Hudson 1-H Drilling Program; and Huffman 2-H Drilling Program. Each of these Agreements included an arbitration provision. Plaintiff states the Trust paid substantial sums of money in order to participate

in the production of these drilling programs.

The Agreements required Defendants to pay the Trust, on a monthly basis, its proportionate share of the net revenues generated from the production of the wells.  Plaintiff alleges the payments to the Trust were nothing more than a mere trickle to entice the Trust to invest further.  Plaintiff alleges the payment ceased almost immediately and despite request for payment, Defendants have failed or refused to tender payments to the Trust or provide a meaningful accounting.

Plaintiff alleges Defendants were engaged in the illegal business of the sale of unregistered interests in oil and natural gas.  Plaintiff further alleges Defendants were operating a Ponzi scheme:

> a fraudulent investment operation that pays returns to separate investors from their own money or money paid by subsequent investors, rather than from any actual profit earned.  The Ponzi scheme usually entices new investors by offering returns other investments cannot guarantee, in the form of short-term returns that are either abnormally high or unusually consistent. The perpetuation of the returns that a Ponzi scheme advertises and pays requires an ever-increasing flow of money from investors to keep the scheme going.

DN 11 at 8 n.2.  Plaintiff brought this action alleging breach of fiduciary duty; common law fraud; conversion; and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),18 U.S.C. § 1964 *et seq.*  In addition, Plaintiff has filed a motion for leave to amend his complaint and an Amended Complaint alleging fraudulent inducement, violations of the Securities and Exchange Act of 1934 and Kentucky Blue Sky Laws, as well as demanding an accounting.

Defendants now move the Court to compel arbitration of these claims based on the arbitration provisions in the Agreements between the parties.

### Plaintiff's Motion to Amend the Complaint

#### STANDARD

Federal Rule of Civil Procedure 15 (a)(2) states a party may amend its pleadings with the

opposing party's written consent or leave of the court. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, leave to file amendments should be freely given, but amendments should be tendered no later than pretrial, "unless compelling reasons why this could not have been done are presented." *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 874 (6th Cir.1973). A trial judge must weigh the prejudice to the both parties and good cause shown and determine whether, within its discretion, leave to amend should be granted. *Id.*; *Hayden v. Ford Motor Co.*, 497 F.2d 1292, 1294 (6th Cir. 1974).

## DISCUSSION

Here, this case has not yet been set for trial and the record shows little or no discovery has taken place. Although Plaintiff has provided no reason other than ability "to describe in further detail the tortious acts carried on by the Defendants and eliminate[] any dispute over the specific claims made by this Plaintiff" in support of his motion to amend, the Court does not believe Defendants will be unduly prejudiced by the filing of the Amended Complaint. In light of these circumstances, the Court grants Plaintiff leave to file his Amended Complaint. The Court will consider the amended complaint as filed by Plaintiff with his motion to amend in ruling on the Motion to Compel Arbitration.

### Defendants' Motion to Compel Arbitration

#### STANDARD

The Federal Arbitration Act ("FAA") holds that a written agreement to arbitrate disputes which arises out of a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2).

When asked to compel arbitration, a court must make several determinations before compelling arbitration:

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

As a general rule, any doubts regarding arbitrability should be resolved in favor of arbitration. *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). "State contract law, however, governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." *Id.* at 393 (citations omitted).

## ANALYSIS

Defendants move the Court to order the parties proceed to arbitration and stay the current action until arbitration has been completed. Plaintiff sets out several arguments in opposition to enforcing the arbitration agreement: a valid contract was not entered into and therefore there is no valid arbitration agreement; the contract was for an illegal purpose and is therefore void nullifying the arbitration agreement; even if there was a valid contract, the claims in Plaintiff's complaint are outside the scope of the arbitration agreement; the arbitration clause was induced by fraud and is therefore invalid; the agreement is not enforceable because it was modified or superceded by subsequent events; and the arbitration agreement was unconscionable.

4

**I. Agreement to Arbitrate**

First, the court must determine if a valid agreement to arbitrate exists. 9 U.S.C. § 2; *Stout*, 228 F.3d at 714. "An arbitration agreement may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Fazio*, 340 F.3d at 393-94 (citations omitted). The Court, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), . . . generally . . . should apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

The Sixth Circuit has held "when claims involve the validity of the contract as a whole and not just the arbitration agreement, such claims are to be brought before the arbitrator, not the district court in deciding a petition to compel arbitration." *Fazio*, 340 F.3d at 395 (internal quotations omitted) (citing *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 892 (6th Cir. 2002); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); and *Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 491 (6th Cir. 2001)). However, "[c]laims relating to fraud in the making of the arbitration agreement are determined by the court." *Stout*, 228 F.3d at 714 (citing *C.B.S. Employees Federal Credit Union v. Donaldson, Lufkin and Jenrette Securities Corp.*, 912 F.2d 1563, 1566 (6th Cir.1990)). The FAA states, "[i]f the *making of the arbitration agreement* or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. §4 (emphasis added). More specifically, "the FAA does not permit the courts to examine the enforceability of contracts containing arbitrations provisions", only the validity of the arbitration agreement itself. *Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 452 (6th Cir. 2005). Here, Plaintiff has placed the making of the arbitration agreement at issue by alleging

5

unconscionability and fraudulent inducement. The Court notes Plaintiff raised several other arguments in his response; however, those arguments pertain to the contract as a whole which cannot be determined by this Court. Therefore, it is only for this Court to determine whether the arbitration agreement was unconscionable or if there was fraud in the inducement of the arbitration agreement itself which would make the arbitration agreement invalid.

### A. Unconscionability

The Court will first address Plaintiff's allegation that the arbitration provision is "both procedurally unconscionable and substantively unconscionable." DN 11 at 20. Under Kentucky law, it is a general rule that "absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App.2001) (citing *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764 (Ky. Ct. App.1985)). A narrow exception to the general rule is unconscionability. *Id.* The doctrine of unconscionability has been described by Kentucky courts:

> The doctrine is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain. An unconscionable contract has been characterized as 'one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.' Unconscionability determinations being inherently fact-sensitive, courts must address such claims on a case-by-case basis.

*Id.* at 341-42 (internal citations omitted). Procedural unconscionability, or unfair surprise,

> pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. . . . It involves, for example, 'material, risk-shifting' contractual terms which are not typically expected by the party who is being asked to 'assent' to them and often appear in the boilerplate of a printed form.

*Id.* at 343 n.22 (citations and quotations omitted). Substantive unconscionability, on the other hand,

"refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id.* (citations and quotations omitted).

> Plaintiff asserts, in support of his argument that the agreement was unconscionable, that
>
> no reasonable man would waive his right to trial by jury were he to have known that the Defendants had already been ordered to 'cease and desist' selling these unregistered securities in at least three states and were the subject of an investigation in Kentucky that would ultimately lead to the same result.

DN 11 at 21. Plaintiff seems to argue the arbitration provision is an unfair surprise if it includes claims which Plaintiff did not believe were within the scope of the provision. Plaintiff also stated "the Agreements are also procedurally unconscionable, because the Trust's tort claims are not related to the purported contract." DN 11 at 23.

Defendants argue that in *Valued Services of Kentucky, LLC v. Watkins*, No. 2008-CA-001204-MR, 2009 WL 1705696 (Ky. App. 2009), cited by Plaintiff, the court relied on the lack of an ordinary education and experience by the plaintiff in holding the contract unconscionable. Defendants contend the case at bar is more analogous to the case in *Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co., Inc.*, 983 S.W.2d 501 (Ky. 1998), where Defendants state the contracts "were voluntarily entered into by sophisticated and knowledgeable business men." DN 12 at 16.

The Court notes that at this stage of litigation, the plaintiff must be able to "state a claim for relief that is plausible on its face" in order to succeed. *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It does not suffice to provide "naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted). While the Supreme Court set forth these principles in the context of a motion to dismiss, they are pertinent

to a district court's treatment of the initial pleadings under a motion requiring evaluation of those pleadings.

There has been no evidence presented to the Court that the Agreements were "one-sided, oppressive and unfairly surprising contracts." As to procedural unconscionability, Plaintiff has not asserted that the Agreements were lengthy forms with fine print, or that the arbitration agreement was in any way buried within the Agreements. In fact, the Court notes the Agreements are only a few pages long, in normal type, and the arbitration agreement is immediately preceding the signatures of the parties.

Plaintiff has not provided evidence or allegations of fact supportive of substantive unconscionability either: Plaintiff has presented no allegation or evidence of inequity in bargaining power. The Court is aware no discovery has taken place in this case; however, Plaintiff is aware of the circumstances surrounding the execution of the Agreements at issue. Plaintiff does not allege that the Trust lacked the knowledge or experience to understand the Agreements, nor does Plaintiff allege the Trust was not permitted time to have the documents reviewed by an attorney. There is some allegation by Plaintiff of "hard sale tactics" and "repeated high pressure phone calls"; however, these allegations do not relate to the arbitration agreement itself, but the contract as whole. The Court is unpersuaded by Plaintiff's conclusory allegations of unconscionability unsubstantiated by factual support.

### B. Fraudulent Inducement

Plaintiff alleges the arbitration agreement itself was fraudulently induced. To establish a prima facie case for fraud under Kentucky law, a plaintiff must prove by clear and convincing evidence that: (1) the defendant made a material misrepresentation to the plaintiff; (2) the

8

misrepresentation was false; (3) the defendant knew it was false or made it recklessly; (4) the defendant induced the plaintiff to act upon the misrepresentation; (5) the plaintiff relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff. *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 262 (Ky. Ct. App. 2007) (citing *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999)).

Plaintiff alleges in his Amended Complaint "the Trust's willingness to assent to the terms of the agreement, and the agreement itself, was caused by material fraudulent misrepresentations of Defendants. . . [and] Plaintiff has been damaged by the Defendants actions. . . ." In Plaintiff's Response, Plaintiff provides allegations that Plaintiff "received from the Defendants a hard sale market approach . . . [and] received repeated high pressure phone calls through which the Defendants made boisterous representations to [the Plaintiff] regarding potential earnings and the certainty that there would be a return on [Plaintiff's] investment." DN 11 at 18. As stated, these allegations apply to the contract as a whole rather than merely the arbitration clause. Furthermore, these allegations are not sufficient for the Court to hold there was fraudulent inducement of the arbitration agreement. Plaintiff is unable to state a claim for fraudulent inducement of the arbitration agreement that is plausible on its face.

Plaintiff placed the making of the arbitration agreement at issue by alleging unconscionability and fraudulent inducement. However, Plaintiff is unable to successfully invalidate the agreement on those grounds. The Court finds there was a valid arbitration agreement.

**II. Scope**

Next, the Court must determine the scope of the arbitration agreement. "District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration

9

agreement." *Fazio*, 340 F.3d at 395 (citing *Stout*, 228 F.3d at 714). The test is whether an action could be maintained without reference to the contract or relationship at issue. *Id.* If the action could be brought without reference to the contract then it is likely outside the scope of the arbitration agreement. *Id.* The Sixth Circuit explained,

> Torts may often fall into this category, but merely casting a complaint in tort does not mean that the arbitration provision does not apply. Even real torts can be covered by arbitration clauses if the allegations underlying the claims 'touch matters' covered by the agreement. We are, however, aware of the Supreme Court's warning against forcing unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.

*Id.* (Internal citations and quotations omitted).

The agreement states:

XVI. Miscellaneous
1) All disputes or breaches hereunder shall be submitted to binding arbitration pursuant to the rules of the American Arbitration Association then pertaining in Bowling Green, Kentucky.
2) All arbitration or court proceedings shall take place in Bowling Green, Kentucky.
3) The Agreement shall be governed, construed and enforced in accordance with the law of the State of Kentucky and litigated in Kentucky.

DN 11-5 at 10-11. Plaintiff argues that the language of paragraph number two is evidence that Defendant acknowledges that claims could arise that are outside the scope of the arbitration agreement. Plaintiff asserts that the claims raised in his original complaint are outside the scope of the arbitration provision of the Agreements. Defendant argues the language of the agreement was clear and unambiguous and requires arbitration of "all disputes or breaches". Defendant points out there are no provisions providing exclusion of particular claims from arbitration.

The Court finds that all of Plaintiff's claims are within the scope of the arbitration agreement. The Court will first look at Plaintiff's tort claims for fraud and conversion. In a similar case before the Sixth Circuit, the court held the plaintiff's claims for fraud and conversion were within the scope

10

of the arbitration agreement. *Fazio*, 340 F.3d 386 (6th Cir. 2003).

In *Fazio*, a broker employed by a brokerage firm had been falsifying statements sent to his clients significantly overstating the value of the accounts. *Id.* at 392. The plaintiffs bought an action alleging numerous security law violations as well as theft and other common law and statutory claims. *Id.* After the defendants moved to compel arbitration and stay the case, the district court held that the claims were outside the scope of the clause. *Id.* The Sixth Circuit reversed the district court holding the claims alleged were within the scope of the arbitration agreement. *Id.* at 393-96.

In determining the scope of the agreement, the Sixth Circuit explained:

> it is evident that the fraudulent activities were a violation of the account agreements and arose out of activities contemplated by those agreements the sale and purchase of securities and the management of accounts. The lawsuit by necessity must describe why [the broker] was in control of the plaintiffs' money and what the brokerage houses' obligations were. The plaintiffs therefore cannot maintain their action without reference to the account agreements, and accordingly, this action is covered by the arbitration clauses.

*Id.* at 395. The court also noted the broad language of the arbitration clause: "any controversy arising out of or relating to any" transaction or performance. *Id.* at 396. The Court held that taking the arbitration agreement at its word "any dispute arising out of (or that must make reference to) the agreements, accounts, or transactions conducted by the defendants is subject to arbitration." *Id.*

While the language of the arbitration clause here is not so broad as "any and all" as in the agreement before the Sixth Circuit in *Fazio*, the Court finds the "all disputes or breaches hereunder" language is broad enough to incorporate each of the claims raised by Plaintiff. As in the *Fazio* case, while the Court notes that fraud and conversion, maybe beyond what Plaintiff expected from Defendants when entering these Agreements, it is clear the fraudulent activities were a violation of the Agreements and arose out of the activities contemplated by those Agreements. This lawsuit, by

11

necessity, must describe why Defendants were in control of the plaintiffs' money; therefore, Plaintiff cannot maintain his action without reference to the Agreements. These claims are within the scope of the arbitration agreement.

Plaintiff's claims of violations of RICO, securities laws, and breach of fiduciary duty similarly require reference to the Agreements. Plaintiff's claims for each of these violations are directly related to the contracts entered between the parties. Again, the "all disputes or breaches hereunder" language is broad enough to incorporate a dispute regarding violation of RICO and the securities laws and regulations. Again, applying the Sixth Circuit test based on ability of the claim to stand alone, in order to establish a violation of RICO, Plaintiff would need to reference the payment scheme set forth in the Agreements. Similarly, in order to establish a claim for violation of the securities law, Plaintiff must reference the sale of the securities evidenced by the Agreements. Finally, Plaintiff states in his complaint, the breach of fiduciary duty is in "contravention of both the contractual documents, statutory law and common law." DN 10-2 at 5. The Court finds the claims for violation of RICO; the Securities Exchange Act of 1934 and Kentucky Blue Sky Law Kentucky Revised Statutes Chapter 292; and breach of fiduciary duty are within the scope of the arbitration agreement.

### III. Arbitrability of Statutory Claims

Next, if federal statutory claims are asserted, as in this case, the Court must consider whether Congress intended those claims to be nonarbitrable. Here, the Court has found Plaintiff's RICO and securities law claims are within the scope of the arbitration agreement. The Court finds that both of these claims may be arbitrated. *Rodriquez de Quijas v. Shearson/American Exp., Inc.,* 490 U.S. 477 (1989) (holding that claims under the Securities Act and Securities and Exchange Act may be

arbitrated); *Shearson/American Express v. McMahon*, 482 U.S. 220 (1987) (holding that claims under RICO may be arbitrated).

**IV. Stay of Remaining Non-arbitrable Claims**

Finally, the Court has concluded that all of the claims in the action are subject to arbitration, therefore, the Court need not determine whether to stay the remainder of the proceedings pending arbitration.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** Plaintiff's Motion for Leave to File an Amended Complaint is **GRANTED**.

**IT IS FURTHER ORDERED** Defendants' Motion to Compel Arbitration is **GRANTED**. This case is **DISMISSED**.